**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Caitlin Wise, | ) | CASE NO. 1:14 CV 630 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| T-Man, LLC, et al., | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion of the Defendants, Summer Costanzo,

Wads Tavern LLC, and Medina Tap House LLC, for Summary Judgment (Doc. 156), Plaintiff's

Motion for Summary Judgment Against Defendants T-Man, Manfreda, Jon Middendorf,

Summer Costanzo and Others (Doc. 158), and the Motion to Strike filed by defendants T-Man

LLC and Manfreda (Doc. 164).  This case arises under the Fair Labor Standards Act ("FLSA").

For the following reasons, plaintiff's motion for summary judgment is DENIED.  The motion for

summary judgment filed by defendants Summer Costanzo, Wads Tavern LLC, and Medina Tap

House LLC is GRANTED in PART and DENIED in PART and the motion to strike is DENIED.

1

Throughout the briefing, plaintiff requests sanctions against certain defendants.  That request is also DENIED.

**FACTS**

Because the briefs filed in this case are at times convoluted and the parties dispute the admissibility of nearly all of the evidence offered in the case, the Court will endeavor to provide a brief overview of the facts.  To the extent necessary, the Court will address specific facts and issues in the analysis section.

Plaintiff, Caitlin Wise, filed this lawsuit against defendants, T-Man, LLC ("T-Man"), Wads Tap, LLC ("Wads Tap"), Wads Tavern, LLC ("Wads Tavern"), Medina Taphouse, LLC ("Medina Taphouse"), Jon Middendorf, Thomas Manfreda, and Summer Costanzo, alleging wrongdoing in connection with plaintiff's employment.

Plaintiff began her employment in May of 2011 at a bar known as 69 Taps (Medina).  It appears that this location was owned by defendant T-Man, which was in turn owned by defendants Middendorf and Manfreda.  Plaintiff claims that she worked primarily at that location, but also worked approximately five shifts at a bar known as 69 Taps (Wadsworth).  This location was owned by defendant Wads Tap, which in turn was owned by defendants Middendorf and Manfreda.  Plaintiff claims that from May of 2011 through May of 2012, plaintiff did not receive any wages for her work.  Rather, she worked for "tips" alone.  Beginning in May of 2012, through her termination in November of that year, plaintiff received a wage of less than minimum wage.  Plaintiff also claims that throughout her employment she worked overtime for which she was not compensated.

Defendant Costanzo was a manager at one or more of the 69 Taps locations.  Ultimately,

2

T-Man was sold to Medina Tap House. Medina Tap House is an LLC created by Costanzo for effectuating the asset purchase. Similarly, Costanzo created Wads Tavern to purchase the assets of Wads Tap. These transactions occurred after this lawsuit was filed.

Thereafter, plaintiff filed this case. The amended complaint contains seven claims for relief. Count one is a claim for failure to pay minimum wage and is asserted under Ohio statutory and constitutional law, as well as FLSA. Count two generally alleges failure to pay overtime. Count three alleges a violation of O.R.C. §4113.15. Count four is a claim for spoliation of evidence. Counts five and six assert claims for retaliation under Ohio statutory law and FLSA, respectively. Count seven is a claim for fraudulent transfer.

During the course of the litigation, the Court entered a default judgment against defendant Middendorf with respect to liability as a result of his conduct during this litigation, as well as his failure to comply with court orders. The issue of damages remains pending against Middendorf. Thus, although plaintiff purports to seek summary judgment against all defendants, the Court will only consider plaintiffs' arguments on damages as to this defendant.

Plaintiff moves for partial summary judgment and, with the exception of Wads Taps, defendants oppose the motion. Defendants Summer Costanzo, Wads Tavern, and Medina Tap House also move for summary judgment and plaintiff opposes their motion.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

3

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard.  See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The court must afford all reasonable inferences and construe the evidence in

4

the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **ANALYSIS**

A.  FLSA

FLSA provides that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the [minimum wage rate...].  29 U.S.C. § 206.  In addition, with regard to overtime, FLSA provides:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

5

29 U.S.C. § 207.

Thus, to establish a violation of FLSA, an employee must show either (1) "individual" coverage, *i.e.*, the employee herself engaged in commerce or (2) "enterprise" coverage, *i.e.*, the employer was engaged in commerce.  The Court finds that genuine issues of material fact exist as to whether defendants are subject to FLSA.  The Court will address each prong in turn.

<u>Individual coverage</u>

Plaintiff argues that FLSA applies to defendants because plaintiff engaged in "interstate commerce" by selling "alcohol and liquor, which originated in other states and was brought to Ohio through the stream of interstate commerce."  (Doc. 158 at p. 15).  In support of her position, plaintiff attaches to her brief the 2014 "beer list" from the 69 Taps Medina location.  (Doc. 159-11).  In her brief, plaintiff claims that these beverages are sold in other states and foreign countries.  For example, plaintiff notes that the Medina location lists Yuengling as a choice and claims that it is a "well known Pennsylvania beer, only recently available in Ohio."  (Id. at p. 16).  Defendants, however, move to strike this exhibit on the grounds that it is hearsay and has not been authenticated.  In response, plaintiff argues that the beer list "stand[s] separate, apart and independent of the statements of the parties involved" and was "created prior to the series of wage cases."  As such it is more likely to be truthful than other evidence.

In order to establish individual coverage under FLSA, the employee must be engaged in "interstate commerce."  "[F]or an employee to be "engaged in commerce" under FLSA, she must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate

6

commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *See, Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citations and quotations omitted).   Here, the only evidence plaintiff points to is the beer list from 69 Taps's Medina location.  Assuming *arguendo* that plaintiff could overcome defendants' hearsay and authenticity objections, the Court finds that it cannot properly rely on the exhibit at this point in the proceedings.  The exhibit indicates that it is the 2014 beer list.  Thus, the list is simply not relevant to whether plaintiff, who was terminated in 2012, engaged in commerce during her employment.  Moreover, to the extent the list could have some marginal relevance, there is no indication on the list itself whether the beverages in question were transported in interstate commerce.  Plaintiff's counsel simply attempts to inform the Court as to the production location of three of the beers.  This is simply not evidence.  As such, plaintiff is not entitled to summary judgment on the applicability of FLSA with respect to individual coverage.

<u>Enterprise coverage</u>

FLSA could also apply to plaintiff's claims under a theory of enterprise coverage.  In order to establish enterprise coverage, plaintiff must establish that defendants constitute an "enterprise" as that term is defined by statute.  FLSA provides as follows:

'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise that–

(A)    (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; **and**

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated);

7

29 U.S.C. § 203(s)(1)(emphasis added).

A number of factors are reviewed to determine whether a group of entities constitutes an "enterprise" for purposes of the statute.  Both prongs, however, must be satisfied in order to qualify for enterprise coverage.  Here, plaintiff makes a sweeping and entirely unsupported statement that defendants have "gross income [] greater than $500,000."  (Doc. 158 at p. 15). Plaintiff wholly fails to point the Court to any evidence in support of this assertion.  Absent some evidence, the Court cannot grant summary judgment in plaintiff's favor on the applicability of FLSA enterprise coverage.

Because the Court cannot say that plaintiff is entitled to summary judgment on the applicability of FLSA, the Court need not reach any remaining arguments directed at the FLSA claims in connection with plaintiff's summary judgment motion.  The motion is DENIED with respect to the FLSA claims because plaintiff has not shown entitlement to coverage under the statute.

B.  Ohio wage claims

Plaintiff argues that the Ohio Minimum Fair Wage Act ("OWA") and Section 34a of Article II of the Ohio Constitution ("Section 34a") apply to plaintiff's claims.  According to plaintiff, the rate of the wage is dependent on the gross income of the employer.  If an employer earns more than $250,000 per year in gross income, the Ohio minimum wage rate applies.  If, however, an employer earns less than this amount, the lower federal minimum wage rate applies.[1]        Defendants do not dispute that OWA and Section 34a apply to plaintiff's claims.

---

[1]        T-Man notes that the rate is determined by looking at the gross income from the previous year.  As plaintiff worked in 2011 and 2012, plaintiff would need to produce tax records from 2010 in

Accordingly, the Court finds that these provisions apply to defendants. The Court will thus continue to analyze plaintiffs' summary judgment arguments with regard to these provisions.

Plaintiff argues that defendants are all "employers" for purposes of OWA and Section 34a.  Pursuant to Ohio law, FLSA's definition of "employer" applies to Ohio wage claims.  *See*, Section 34a.  The court determines as a matter of law whether a party is an employer using an "economic reality" test.  *Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994).

> Under FLSA, an 'employee' is defined as 'any person acting directly or indirectly in the interest of an employer in relation to an employee ..'  29 U.S.C. § 203(d). ...[T]he test to be applied in determining whether a person is an 'employer' responsible for FLSA obligations is one of 'economic reality.' More than one 'employer' can be responsible for FLSA obligations. Thus, a corporate officer who has operational control of the corporation's covered enterprise is an "employer" under FLSA, along with the corporation itself.

*United States Dep't of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995).

> Sixth Circuit caselaw has established that to be classified as an employer, it is not required that a party have exclusive control of a corporation's day-to-day functions. However, the party must have operational control of significant aspects of the corporation's day to day functions.

*Perez v. Sophia's Kalamazoo, LLC* , 2015 WL 7272234 (W.D.  Mich. Nov. 17, 2015)(*citing Cole* and  *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991)).  Factors courts should look to in assessing operational control include: the individual's ownership interest in the corporate employer, check issuing ability, custody and control of employment records, ability to

---

order to determine which rate applies.  According to T-Man, plaintiff fails to do so.  Regardless, however, T-Man does not dispute that the statute applies.  Because the Court has determined that genuine issues of material fact exist as to damages, the Court need not resolve the issue of which rate applies at this point.  This is especially so in that T-Man did not move for summary judgment.

9

determine employment practices, involvement in hiring and termination of employees, setting salaries, and daily control over the business operations.  *See*, *Id*.; *Cole*; *Elliott Travel*.

As an initial matter, the Court notes that the parties' briefs make the task of assessing this element extremely difficult.  The parties confuse concepts, fail to respond to certain arguments, refer back to previously filed materials, cite inadmissible evidence, and make broad unsupported assertions in support of their positions.  Nonetheless, the Court will endeavor to assess this element as best it can.

In her motion, plaintiff argues that "69 Taps and Eatery was a single entity and enterprise operating multiple locations."  Although far from clear, it appears that plaintiff is attempting to rely on "enterprise liability" to establish that all defendants are "employers" for purposes of this element.  Whether enterprise liability exists is a wholly separate inquiry from whether an entity or individual qualifies as an "employer." *Mathews v. Bronger Masonry*, 772 F.Supp.2d. 1004, 1010 (S.D. Ind. 2011).  It appears that perhaps plaintiff intended to argue that T-Man and Wads Tap are "joint employers."  But, plaintiff goes further and requests that the Court determine that *all* defendants are "joint employers," yet makes no argument regarding some defendants, including for example, Middendorf[2], Manfreda[3], Medina Taphouse, and Wads Tavern.  Plaintiff also claims that "Highland Tavern" is part of this "enterprise."  Plaintiff, however, wholly fails to identify any connection Highland Tavern has to plaintiff.  Although plaintiff provides an

---

[2]     The Court previously entered a default judgment against Middendorf so liability as "employer" is established with regard to this defendant.

[3]     In this section of plaintiff's brief, she notes only that Manfreda wrote certain checks out of accounts that she claims were used by various bars.

10

unsupported statement that "Manfreda opened Highland Tavern in 2012," it is not clear that the entity even existed during plaintiff's employment tenure.  Plaintiff nonetheless presents a convoluted analysis of Highland Tavern's connection to Middendorf through an entity known as "Em & Em Properties."

The Court's task is not helped by the fact that the defendants essentially fail to respond to this issue.  Defendants T-Man and Manfreda move to incorporate their previously filed briefs and specifically note that the current brief is simply a "supplement."  Plaintiff opposes the motion to incorporate.  Plaintiff notes that she refiled a new summary judgment motion and sought leave to exceed the page limitation.  If the Court were to allow these defendants to rely on multiple briefs, the defendants would exceed the page limitation without having been given permission by the Court.   Upon review, the Court DENIES the motion to incorporate.  The Court previously mooted the prior pending motions.  Plaintiff filed a new brief and sought an extension of the page limitation.  Defendant did not.  The Court will not go back through the docket and piece together defendants' arguments in opposition.  This is especially so in light of the fact that the collective briefing would exceed the Court's page limitation. The Court's determination is bolstered by the fact that plaintiff opposes defendants' motion and defendants did not file a reply brief in support of their request to incorporate.   Accordingly, defendants' motion to incorporate previously filed briefs is DENIED.  The Court will consider only the brief (Doc. 164)  filed by defendants in connection with plaintiff's current motion.

Having identified which brief will be considered, the Court now turns to defendants' response. Defendants do not respond to the issue of which, if any, defendants are "employers" for purposes of plaintiff's Ohio claims.  In fairness, defendants Manfreda and T-Man respond to

plaintiff's enterprise argument on the grounds that the entities do not collectively satisfy the monetary minimums for establishing an "enterprise" claim.  In determining whether FLSA applies to the claims at issue, the Court accepted this argument as set forth above.  With regard to defendants Summer Costanzo, Wads Tavern, and Medina Tap, these defendants also do not respond to plaintiff's "enterprise" argument.  Costanzo, however, does oppose plaintiff's argument to the extent plaintiff claims she is an "employer."  Defendant Wads Tap, who plaintiff claims was the owner of the 69 Taps Wadsworth location during plaintiff' employment, did not oppose summary judgment at all.[4]

Upon review, the Court finds that it must deny plaintiff's request to impose "enterprise" liability on "all defendants."  As set forth above, the Court determined that plaintiff failed to establish entitlement to claim "enterprise" liability under FLSA because plaintiff failed to present sufficient evidence of the gross income of the various entities at issue.  Moreover, whether an "enterprise" exists for purposes of FLSA is an entirely distinct matter from whether entities qualify as "employers."  *Mathews v. Bronger Masonry*, 772 F.Supp.2d. 1004, 1010 (S.D. Ind. 2011).  Thus, the Court simply cannot grant summary judgment with respect to plaintiff's "enterprise" claim as it is not even clear what relief plaintiff seeks by making these arguments.

It appears that plaintiff may have possibly  intended to argue that T-Man and Wads Tap are "joint employers."  In support of this position, plaintiff notes that the "69 taps" locations shared bank accounts, had the same ownership, and at least two of the locations shared a contact

_____

[4]    The Court notes that plaintiff's motion is captioned as a motion for summary judgment against "Defendants T-Man, Manfreda, Middendorf, Summer Costanzo and 'others'."  Although plaintiff captions her motion as such, the motion is clearly directed at "all defendants."

person.  Plaintiff further argues that the locations shared employees as needed.  Upon review, the Court simply cannot determine at this point in the litigation that *all* defendants are "joint employers."  As noted above, plaintiff spends an inordinate amount of time arguing that the three "69 taps" locations are part of the same enterprise.  But the focus should be on whether the defendants themselves (*i.e*., T-Man, Wads Tap, Wads Tavern, Medina Taphouse, Middendorf, Manfreda, and Costanza) can be considered "joint employers."  Plaintiff simply fails to make this argument or support it with sufficient evidence to warrant summary judgment against *all* defendants on the issue of "joint employer" liability.  The Court will not *sua sponte* parse out a subgroup of defendants for purposes of this issue.

Plaintiff next argues that the defendants are "jointly and severally" liable for damages to plaintiff.  According to plaintiff, Manfreda and Middendorf are "employers" as a matter of law because they held the liquor license applicable to the 69 Taps Medina location owned by T-Man, as well as the 69 Taps Wadsworth location owned by Wads Tap.  Plaintiff claims that Ohio liquor law requires that permit holders maintain control over the operation of the facility covered by the license–including the employment function.  Thus, plaintiff claims that these two individuals qualify as "employers" because their ownership interests are identified on the liquor license renewal applications.[5]  As an initial matter, the Court previously entered a default

---

[5]     Defendants move to strike all exhibits from the complaint, which would include the liquor license applications.  According to defendants, plaintiff fails to authenticate all of the exhibits she attaches to her motion.  In response, plaintiff argues that because she will be able to authenticate the exhibits at trial under various theories, the Court should not exclude them now.  Defendants do not reply to this argument. Upon review, the Court will not strike the liquor license renewal applications at this time. *See*, Rule 56(c)(2) advisory committee's notes to the 2010 Amendments ("an

judgment against Middendorf.  Therefore, he is an "employer" for purposes of plaintiff's claims.  The Court further finds that Manfreda is an employer based on the simple fact that he does not oppose plaintiff's claim that Mandfreda's ownership interest in T-Man and Wads Tap subjects him to employer liability under Ohio's liquor laws.  Accordingly, the Court finds that both Manfreda and Middendorf are employers for purposes of plaintiff's claims.  And, although not expressly argued, the Court finds that T-Man and Wads Tap are "employers" as well.  T-Man is the entity that owned 69 Taps Medina, the location where plaintiff engaged in the vast majority of her work.  But, plaintiff also testified that she worked shifts at 69 Taps Wadsworth, the location owned by Wads Taps.  As the corporate owners of the locations at which plaintiff worked, they are undoubtedly employers.   This is especially so with respect to Wads Tap, who did not file any opposition to plaintiff's motion.

Although couched in terms of "joint and several liability," plaintiff makes no arguments directed at this concept.  Rather, the only argument plaintiff makes in this section is that Manfreda and Middendorf are employers.  Accordingly, the Court cannot stay that joint and several liability applies to all defendants as a matter of law.

The parties cross-move on the issue of whether Costanzo had "operational control" and

---

objection [under Rule 56(c)(2)] functions much as an objection at trial.... The burden is on the proponent to show that the material is admissible as presented *or to explain the admissible form that is anticipated*.") Here, plaintiff argues that the defendants themselves will be able to authenticate many of the exhibits offered by plaintiff.  Plaintiff also points out that many exhibits are public records.  Defendants do not respond to plaintiff's arguments.  Having failed to do so, the Court cannot say that plaintiff will be unable to authenticate her documents at trial.  Thus, the Court will consider these documents for purposes of the pending motions.

thus qualifies as an "employer" for purposes of plaintiff's claims.  As set forth above, factors courts should look to in assessing operational control include: the individual's ownership interest in the corporate employer, check issuing ability, custody and control of employment records, ability to determine employment practices, involvement in hiring and termination of employees, setting salaries, and daily control over the business operations.

Plaintiff argues that Costanzo is an employer based on the following.  Costanzo terminated plaintiff, thus she possessed certain supervisory powers including the hiring and firing of employees.  She further had daily operational control because she made decisions regarding the day to day functions of the business, including setting some prices, hiring DJs, and ordering food.  Costanzo scheduled shifts for the bartenders, including plaintiff.  With regard to ownership, plaintiff testified that Costanzo informed plaintiff that she was an owner of "69 Taps."  In addition, Costanzo signed checks, including one payroll check.  Plaintiff further points out that Costanzo distributed the "new hire" paperwork.

On the other hand, Costanzo argues that the she was merely an employee of T-Man and Wads Tap.  She claims she had no ownership interest in either business.  Costanzo also notes that she did not hire plaintiff.  Costanzo acknowledges that she set shifts for the bartenders and changed some of the entertainment at the bar.  According to Costanzo, she did not have responsibility for payroll.  Approximately three months after becoming manager, Costanzo learned that plaintiff was not on the payroll.  She approached Manfreda and requested that the employees be placed on the payroll.  Ultimately, a payroll was put in place.  Costanzo further argues that two checks signed over the course of a long period of time does not show control over day to day functions.  According to Costanzo, she was simply another employee of T-Man.

15

Although she supervised plaintiff and had some involvement with the operations of the bar, this in and of itself does not satisfy the definition of "employer."

Upon review, although generally the determination as to whether an individual is an "employer" is a question of law, the Court finds that genuine issues of material fact exist such that summary judgment is not appropriate in favor of either party.  Primarily, the Court notes that the parties dispute whether Costanzo owned a portion of T-Man or Wads Tap.  On the one hand, plaintiff testified that Costanzo informed her that she owned part of "69 Taps."  Costanzo, however, avers that at no point did she have an ownership interest in either T-Man or Wads Tap. The Court finds that this factor is particularly relevant to determining whether Costanzo meets the definition of "employer" under FLSA.  Absent any ownership interest whatsoever, the Court would be unlikely to conclude based on the evidence presented that Costanzo's activities are sufficient to meet FLSA's definition of "employer."  Many supervisors in restaurant chains have the authority to set schedules and hire and fire employees.  These supervisors may also have the ability to select entertainment.  The purpose of FLSA, however, is to attach liability to individuals and entities making the decisions that allegedly violated FLSA.  Thus, factors such as "ownership interest" and whether the individual was a "corporate officer" of the covered employer are particularly relevant.  *See, e.g., Smith v. The Cheesecake Factory Restaurants, Inc.*, 2010 WL 441562 (M.D. Tenn. Feb. 4, 2010).  Thus, often absent an ownership interest or a role as an officer or director of a covered employer, individual restaurant managers will not be considered "employers" for purposes of FLSA.  Because there is conflicting evidence as to whether Costanzo held an ownership interest in either T-Man or Wads Tap, the Court finds that summary judgment is not appropriate.

16

Plaintiff next argues that T-Man is subject to Ohio's overtime laws because it had annual gross sales in excess of $150,000 during the years of plaintiff's employment.  In support of her position, plaintiff relies on T-Man's tax records for the years 2011 and 2012, which show gross income in excess of this threshold.  T-Man does not oppose this argument.  Accordingly, the Court finds that, as a matter of law, T-Man is subject to Ohio's overtime laws.

C. Damages

Plaintiff argues that she is entitled to summary judgment on the issue of damages.  According to plaintiff, defendants did not produce employment records and, as such, she is permitted to demonstrate "the amount and extent of [her] work as a matter of just and reasonable inference."  Here, plaintiff claims that she worked 2,496 hours from May of 2011 though May of 2012.  Plaintiff, however, fails to point to any evidence in support of this assertion.  With regard to the time period May of 2012 through November of that year, plaintiff points to deposition testimony in which she testifies that she worked 1,392 hours.  She claims that she arrived at that number by multiplying 48 hours per week for that 29-week time period.   Upon review, the Court finds that summary judgment is not proper with respect to damages.  Plaintiff fails to offer any evidence in support of her assertion regarding the total number of hours she claims to have worked from May of 2011 through November of 2012.[6]  Providing evidence for only a six-

---

[6]     Plaintiff also relies on certain Facebook posts which plaintiff claims support her testimony regarding the number of hours she worked.  The parties contest the admissibility of these exhibits. The Court finds that even if these exhibits are considered, genuine issues of material fact exist as to the number of hours plaintiff worked during her entire tenure.  Plaintiff herself acknowledges that these posts simply "support" her argument as they are in no way thorough enough to establish , even generally, the number of hours worked.

month period, without more, is not sufficient to warrant summary judgment.  In addition, summary judgment is not warranted with respect to the hourly rate requested by plaintiff. Plaintiff argues that during discovery Manfreda lied and indicated that plaintiff received a wage of $8.00 per hour.  Plaintiff requests that the Court impose that hourly rate in connection with plaintiff's wage claims.  Plaintiff, however, acknowledges that the federal minimum wage during the relevant time period was $7.25 per hour.  Plaintiff cites no law in support of her claim that she is entitled to an hourly rate of more than minimum wage based essentially on a theory of estoppel.

D.  Fraudulent transfer/successor liability

In count seven, plaintiff purports to assert a claim for "fraudulent transfer."  Medina Taphouse is alleged to be the successor to T-Man and Wads Tavern is alleged to be the successor to Wads Taps.  All of the allegations in count seven are directed at the successor entities. Plaintiff alleges that Costanzo, Medina Taphouse and Wads Tavern fraudulently transferred the assets of T-Man and Wads Tap.  The complaint, however, is completely devoid of any allegations directed at the transferors, *i.e.*, T-Man, Wads Tap, Manfreda, and Middendorf.  The last paragraph in the complaint alleges that the successor entities and Costanzo are liable as "successor corporations."  Because there are no allegations directed at the transferors, the Court construes this claim to assert successor liability against Costanzo, Medina Taphouse, and Wads Tavern.

Having so construed the claim, the Court will endeavor to address the parties' motions for summary judgment.  Costanzo and the successor entities argue that successor liability does not apply in this case.  In analyzing successor liability, Ohio law applies to plaintiff's Ohio wage

claims.  *See, Clark v. Shop24 Global, LLC*, 77 F.Supp.3d 660,693 (S.D. Ohio Jan. 16, 2015)("the

federal standard for successor liability is not applicable under the Ohio Act").   Federal common

law, however, applies to plaintiff's FLSA claim.  *Id.*  (Predicting that the Sixth Circuit would

join other circuits and apply theories of successor liability to FLSA claims); *Thompson v.

Bruister and Associates, Inc.*, 2013 WL 1099796 (M.D. Tenn. March 15, 2013).  The factors

applicable to successor liability under FLSA are not coterminous with those under Ohio law and

it appears less difficult to establish successor liability under federal law.  Notably, *no party even

attempts* to analyze successor liability under the federal standard.  As such, the Court cannot

grant summary judgment on this theory of liability.  The Court declines to address the parties'

arguments regarding successor liability under Ohio law in that the parties will remain in this case

as successors in any event.

     E.  Ohio Prompt Pay Act

     Plaintiff argues that to the extent the Court grants summary judgment on plaintiff's FLSA

or Ohio Wage claims, then plaintiff is entitled to summary judgment with respect to her Prompt

Pay Act claim.  As set forth herein, the Court cannot say that plaintiff is entitled to summary

judgment with respect to the FLSA or Ohio Wage claims.  Therefore, plaintiff is not entitled to

summary judgment on the Ohio Prompt Pay Act claim.  In addition, plaintiff attempts to engage

in a damages analysis in support of her claim.  Plaintiff asks that the Court apply O.R.C. §

4113.15(C) in calculating damages.  As defendant points out, however, that provision applies to

the failure to pay fringe benefits.  Plaintiff, however, does not claim that defendants failed to pay

fringe benefits.  For this additional reason, summary judgment is not appropriate.

     F.  Spoliation

In one sentence, plaintiff seeks summary judgment on her claim for spoliation of evidence.  Plaintiff "incorporates prior argument and evidence as to Defendant Manfreda and T-Man's efforts to obscure discovery and destroy necessary evidence, such as employment records."  This statement, standing alone, falls far short of establishing entitlement to summary judgment.  The Court will not parse through the record and attempt to support plaintiff's claim.  Rather, it is incumbent on the plaintiff to point to the Court to evidence and law in support of her claim.  According, summary judgment is denied.

G.  Retaliation

Plaintiff does not move for summary judgment on this claim.  On the other hand, defendant Costanzo argues that she is entitled to summary judgment on this claim.  In her complaint, plaintiff alleges that Costanzo engaged in retaliation by "disposing of and secreting away evidence and records which would support her wage claim" and "interfering with access to witnesses including but not limited to paying witnesses for false testimony in the form of affidavits."  Costanzo provides her own affidavit in which she denies having attempted to pay witnesses for false testimony.  Costanzo also avers that she did not have control over the employment records at issue in this case.  Nor did she participate in any allegedly threatening phone calls to plaintiff and her counsel.

In response, plaintiff describes various actions engaged in by Manfreda and Middendorf.  These actions are very serious and include death threats for which Mafreda was subsequently indicted.  Plaintiff also signed a false affidavit at the urging of these defendants.  Plaintiff, however, fails to point to any evidence that Costanzo had any involvement with these activities.  Plaintiff argues that the defendants have maintained a "united front" and have not filed cross-

claims against each other.  This, however, is not evidence of retaliation.  Plaintiff argues that "to

the extent, if any, of Costanzo's participation in the underlying acts of retaliation" summary

judgment is not appropriate.  Plaintiff, however, cannot rely on general claims of wrongdoing in

response to a motion for summary judgment.  Rather, it is incumbent upon her to point to

evidence creating a genuine issue of material fact.  She has not done so with respect to this

claim. In fact, in the entire section opposing Costanzo's request for summary judgment, plaintiff

fails to cite to any evidence at all that is directed at Costanzo.  Thus, the Court finds that

summary judgment in favor of Costazno is warranted with respect to plaintiff's retaliation claim.


    H.  Sanctions

      Randomly, throughout the briefing, plaintiff requests sanctions for various conduct.  By

way of example only, plaintiff argues that defendant Costanzo "has supported her motion for

summary judgment with an affidavit and scant supporting evidence.  Her affidavit repeats many

of the same statements, which the evidence continues to contradict."  Accordingly, plaintiff

requests sanctions against Costanzo for supplying an affidavit in "bad faith."  The Court has

reviewed plaintiff's arguments and finds that sanctions are not warranted.  Although Costanzo's

testimony at times appears in conflict with other testimony or documents, the Court cannot say

that her actions rise to the level of sanctionable conduct.  By way of example, plaintiff points out

that Costanzo testified that she lacked the authority to write checks on behalf of any of the

defendant entities.  Yet, plaintiff located two checks which bear Costanzo's signature.  Plaintiff

complains that Costanzo is improperly describing those two checks as "isolated incidents."  The

Court finds that plaintiff's description of these activities does not necessarily amount to "bad

faith." As such, the Court will not impose sanctions based on Costanzo's affidavit.

Plaintiff also seeks sanctions against Middendorf.  Plaintiff points out that a default judgment was entered against Middndorf and, therefore, Middendorf should not have filed a brief in opposition to plaintiff's summary judgment motion.  The Court denies sanctions in that plaintiff *moved* for summary judgment against Middendorf and did not make clear in her motion the basis for including Middendorf in that motion.

### CONCLUSION

For the foregoing reasons, the Motion of the Defendants, Summer Costanzo, Wads Tavern LLC, and Medina Tap House LLC, for Summary Judgment (Doc. 156) is GRANTED with respect to plaintiff's claim for retaliation and is DENIED in all other respects.  Plaintiff's Motion for Summary Judgment Against Defendants T-Man, Manfreda, Jon Middendorf, Summer Costanzo and Others (Doc. 158) is DENIED and the Motion to Strike filed by defendants T-Man LLC and Manfreda (Doc. 164) is DENIED.  Plaintiff's requests for sanctions are DENIED.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 6/29/16

22